**FRIENDS OF the BITTERROOT, INC.,** a non-profit Montana corporation, and American Wildlands Inc., a non-profit Colorado corporation, Plaintiffs,

v.

**UNITED STATES FOREST SERVICE,** United States Department of Agriculture; Ronald Prichard, Forest Supervisor, Beaverhead National Forest; John W. Mumma, Regional Forester, Region One and F. Dale Robertson, Chief of the United States Forest Service, United States Department of Agriculture, Defendants.

No. CV–90–76–BU.

United States District Court,
D. Montana,
Butte Division.

Dec. 29, 1994.

Order Amending Judgment
March 6, 1995.

Jack R. Tuholske, Tuholske Law Office, Missoula, MT, for plaintiffs.

Robert J. Brooks, Office of the U.S. Attorney, Butte, MT, Gary B. Randall, U.S. Department of Justice—Environment & Natural Resources, Washington, DC, Anthony P. Hoang, U.S. Department of Justice—E.N.R.D. General Litigation, Washington, DC, for defendants.

### MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

Plaintiffs, two non-profit corporations, instituted the above-entitled action challenging the United States Forest Service's decision to proceed with a proposed timber sale in the Trail Creek area of the Beaverhead National Forest. Presently before the court are the parties' cross-motions for summary judgment, pursuant to Fed.R.Civ.P. 56. Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

## BACKGROUND

The Trail Creek drainage area is bordered by the Anaconda Pintlar Wilderness area to the north, and the Allan Mountain and West Big Hole roadless areas to the south. The Trail Creek area contains a small amount of undeveloped roadless land which, according to plaintiffs, provides secure wildlife habitat as part of an undeveloped corridor of wilderness areas, National Parks and undeveloped roadless land that extends along the Continental Divide from Glacier National Park to Yellowstone National Park.

In 1986, the Forest Service, in accordance with the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 *et seq.*,[1] implemented a land and resource management plan for the Beaverhead National Forest. The plan divided the Beaverhead National Forest into twenty-nine management areas, each with different management goals. The plan allocated the Trail Creek area to multiple-use prescriptions, which include timber management.

In 1988, the Forest Service initiated plans for the Trail Creek timber sale and road construction project. Recognizing the proposed actions were a "major federal action significantly affecting the environment",[2] the Forest Service began preparing an EIS to address the project's environmental conse-

quences. The draft EIS for the Trail Creek project was released on August 31, 1989.

In response to concerns raised during the public comment period, the Forest Service modified the draft EIS to include a new alternative, which was ultimately incorporated into the final EIS as the preferred course of action. The final EIS was released on March 16, 1990, and proposed the construction of 5.4 miles of new roads and the harvest of approximately 879 acres of timber, 143 acres of which are located in the Beaver Lakes roadless area.[3] On April 30, 1990, the Forest Supervisor issued the Record of Decision ("ROD") approving the Trail Creek timber sale.

Plaintiffs filed administrative appeals of the Trail Creek ROD and final EIS, raising a number of issues, including habitat fragmentation and the resulting loss of biological corridors[4] and biodiversity. The Deputy Regional Forester, in denying plaintiffs' appeals, noted:

I have reviewed the record for all the correspondence between the Forest and the public. I am unable to find any record of Friends of the Bitter Root, or the signees of this appeal, mentioning the concerns with the analysis now raised for the first time in this administrative appeal.

1. The NFMA directs the Forest Service to develop, maintain and revise comprehensive land and resource management plans for units of the National Forest System. 16 U.S.C. § 1604(a). Each plan must "provide for multiple use and sustained yield of the products and services obtained [from a national forest] in accordance with the Multiple–Use Sustained–Yield Act of 1960 [16 U.S.C. §§ 528–531], and, in particular, include coordination of outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness." 16 U.S.C. § 1604(e)(1). Each forest plan is accompanied by an environmental impact statement prepared in accordance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq. See,* 36 C.F.R. § 219.12.

2. The NEPA requires federal agencies to prepare an environmental impact statement ("EIS") for all "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An EIS serves two purposes: (1) to provide decisionmakers with enough information to aid in the substantive decision whether to proceed with a project in

light of its environmental consequence; and (2) to provide the public with information and an opportunity to participate in gathering information. *Citizens for a Better Henderson v. Hodel,* 768 F.2d 1051, 1056 (9th Cir.1985); *State of California v. Block,* 690 F.2d 753, 761 (9th Cir. 1982); 40 C.F.R. § 1502.1.

3. The Beaver Lakes roadless area is an inventoried roadless area, consisting of two separate parcels in and adjacent to the Trail Creek area. The eastern parcel is approximately 5,500 acres in size, while the western parcel is approximately 7,900 acres in size. Only the western parcel is affected by the proposed Trail Creek timber sale and the alternatives set forth in the Trail Creek final EIS.

4. "Biological corridors provide avenues along which wide-ranging animals can travel, plants can propagate, genetic interchange can occur, populations can move in response to environmental changes and natural disasters, and threatened species can be replenished from other areas." *Marble Mountain Audubon Society v. Rice,* 914 F.2d 179, 180 n. 2 (9th Cir.1990).

*Administrative Record* at Volume 5, *Appeal Decision* at 2.

On December 12, 1990, plaintiffs instituted the present action for declaratory and injunctive relief[5], asserting the Forest Service's decision to proceed with the timber sale is violative of NEPA. Plaintiffs invoke the jurisdiction of this court pursuant to 28 U.S.C. § 1331, in conjunction with 28 U.S.C. § 2201 and 2202.[6]

### DISCUSSION

#### I.

■ NEPA seeks to ensure federal agencies carefully evaluate the potential environmental consequences of proposed actions. 42 U.S.C. § 4332; 40 C.F.R. § 1501. NEPA requires the preparation of an EIS under certain circumstances to ensure each agency considers all possible approaches to a particular project (including total abandonment of the project) which would alter the environmental impact and the cost-benefit balance. *All Indian Pueblo Council v. United States,* 975 F.2d 1437, 1444 (10th Cir.1992). "[I]t is absolutely essential to the NEPA process that the decisionmaker be provided with a detailed and careful analysis of the relative environmental merits and demerits of the proposed action and possible alternatives, a requirement that we have characterized as 'the linchpin of the entire impact statement." *Natural Resources Defense Council v. Callaway,* 524 F.2d 79, 92 (2d Cir.1975).

An EIS must contain, *inter alia,* a detailed statement regarding alternatives to the proposed action. *Havasupai Tribe v. United States,* 752 F.Supp. 1471, 1490 (D.Ariz.1990), *citing, Citizens for a Better Henderson v. Hodel,* 768 F.2d 1051, 1057 (9th Cir.1985); 42 U.S.C. § 4332(2)(c)(iii). The discussion of alternatives is "the heart of the environmental impact statement." 40 C.F.R. § 1502.14. Consequently, an agency must examine every reasonable alternative, with the range dictated by the "nature and scope of the proposed

action," *Block, supra,* 690 F.2d at 761, to permit a "reasoned choice." *Methow Valley Citizens Council v. Regional Forester,* 833 F.2d 810, 815 (9th Cir.1987), *rev'd on other grounds sub nom. Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989). *See also,* 40 C.F.R. § 1502.14(a) (agency must "rigorously explore and objectively evaluate all reasonable alternatives").

#### II.

■ Judicial review of agency action in preparing an EIS is governed by the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(D). *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1435 (9th Cir.1988). Accordingly, the proper role for the court is to ensure the agency adequately considered and disclosed the environmental impact of its action, and that its decision was not arbitrary and/or capricious. *Id.*

■ The Ninth Circuit has adopted a "rule of reason" test that necessitates inquiry into whether an EIS contains a "reasonably thorough discussion of the significant aspects of the probable environmental consequences." *Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1519 (9th Cir.1992). A reviewing court must make a "pragmatic judgment whether the EIS' form, content and preparation foster both informed decision making and informed public participation." *Id. See also, California v. Block,* 690 F.2d 753, 761 (9th Cir.1982). "Once satisfied that the agency has taken this procedural and substantive 'hard look' at environmental consequences in the EIS, the court's review is at an end." *Animal Defense Council v. Hodel, supra,* 840 F.2d at 1436, *quoting, Trout Unlimited v. Morton,* 509 F.2d 1276, 1283 (9th Cir.1974).

■ The reviewing court is not free to impose its judgment on an agency, *Havasu-*

---

5. On July 31, 1991, the court granted plaintiffs' motion for a preliminary injunction, enjoining the defendants from proceeding with the proposed Trail Creek timber sale and related road building activity.

6. Plaintiffs' original complaint also advanced a claim under the Freedom of Information Act, 5 U.S.C. § 552, challenging defendants' decision to

withhold various documents relating to the Trail Creek project. The Freedom of Information Act claim was ultimately settled, when the defendants agreed to produce the contested documents and pay plaintiffs' attorneys fees. On January 28, 1991, plaintiffs filed an amended complaint, adding a claim under the Administrative Procedures Act, 5 U.S.C. § 706.

*pai Tribe v. U.S., supra,* 752 F.Supp. at 1490, nor "fly speck" an EIS and hold it insufficient on the basis of inconsequential, technical deficiencies. *Oregon Environmental Council v. Kunzman,* 817 F.2d 484, 492 (9th Cir.1987). However, an EIS may be found inadequate under NEPA if it does not reasonably set forth sufficient information to enable the decision maker to consider the environmental factors and make a reasoned decision. *Id.* at 493.

### III.

■ In Count I of the complaint, as amended, plaintiffs contend the Trail Creek EIS fails to adequately consider the impact of the proposed timber sale on the value of the Trail Creek area as a biological corridor between adjacent wilderness and roadless areas, and the impacts of habitat fragmentation on the biodiversity of the Trail Creek area. In a related argument, plaintiffs assert the Supplemental Information Report included in the administrative record should not be considered in evaluating plaintiffs' claims for relief.[7] Plaintiffs maintain the SIR is simply a "post-hoc rationalization" supporting the Forest Service's decision and, therefore, should not be considered in determining the sufficiency of the Trail Creek EIS. Plaintiffs contend the SIR did not undergo any form of public review or comment, was not subject to an administrative appeal and, as a result, violates the principles governing NEPA, *i.e.,* informed public participation in the administrative process.

The court is unpersuaded by plaintiffs' argument. It is beyond dispute that plaintiffs were afforded ample opportunity to raise, in a timely and explicit manner, their concerns with the potential impact of the Trail Creek sale on biological corridors, biodiversity and habitat fragmentation. The administrative record reveals, however, that plaintiffs did not advance explicit and meaningful comments pertaining to those particular issues

until after the Forest Service issued the Trail Creek ROD. Those particular issues were not raised, in detail, until plaintiffs' administrative appeals of the Trail Creek project.

The Supreme Court has stated:

[A]dministrative proceedings should not be a game or a forum to engage in unjustified obstructionism by making cryptic and obscure reference to matters that "ought to be" considered and then, after failing to do more to bring the matter to the agency's attention, seeking to have that agency determination vacated on the grounds the agency failed to consider matters "forcefully presented."

*Vermont Yankee Nuclear Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 553–54, 98 S.Ct. 1197, 1216–17, 55 L.Ed.2d 460 (1978).

In this court's opinion, the Forest Service took every reasonable step to develop and discuss the comments to the draft EIS and incorporate responses thereto in the final EIS. The administrative record reflects the plaintiffs failed to structure their participation in the NEPA process in a meaningful manner so as to alert the Forest Service to their concerns with the potential impacts on habitat fragmentation, biodiversity and biological corridors. As a result, plaintiffs cannot take issue with the Forest Service's subsequent discussion of those particular issues in a separate document. Consequently, the court concludes the Forest Service's preparation of the SIR was not arbitrary and capricious under the facts and circumstances of this case.

■ Moreover, having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is compelled to conclude the final EIS, together with the SIR, contain a reasonably thorough discussion of the significant aspects of the probable environmental consequences

---

7. On April 8, 1991, defendants filed the administrative record for the Trail Creek project. Included therein was a document entitled "Supplemental Information Report" ("SIR"), prepared by the Forest Service after the present litigation commenced. The SIR examines the proposed timber sale's effect on habitat fragmentation, biodiversity and biological corridors and concludes those particular issues do not necessitate the

preparation of a supplemental EIS. *See, Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 370–71, 109 S.Ct. 1851, 1857–58, 104 L.Ed.2d 377 (1989) (Federal agencies must apply a "rule of reason" and prepare a supplemental EIS if there "are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.")

of the Trail Creek project. The court is satisfied that, with respect to the issues of habitat fragmentation, biodiversity and biological corridors, the Forest Service acted in compliance with the National Environmental Policy Act and did not undertake its duties in an arbitrary or capricious manner. Accordingly, the court concludes the defendants' motion for summary judgment is well taken as to Count I of plaintiffs' amended complaint.

## IV.

In Count II of their complaint, as amended, plaintiffs contend the Trail Creek EIS fails to adequately analyze all reasonable alternatives, including a less environmentally damaging alternative that would exclude logging and road building activity in existing roadless areas within the Beaverhead National Forest. Plaintiffs maintain the EIS should have addressed an alternative exempting the Beaver Lake roadless area from the timber sale in order to preserve that area's value as secure wildlife habitat. In response, defendants assert the alternative advanced by the plaintiffs would not have met the management goals, standards and objectives of the Beaverhead National Forest Plan. Defendants further maintain the development of such an alternative would not have added any new information to the EIS.

■ NEPA requires an EIS provide information in detail and consider every reasonable alternative to a proposed action. *Citizens for a Better Henderson, supra,* 768 F.2d at 1057; *see* 42 U.S.C. § 4332(2)(c)(iii). An agency's range of alternatives is reviewed under a "rule of reason" standard that "requires an agency to set forth only those alternatives necessary to permit a reasoned choice." *California v. Block,* 690 F.2d 753, 767 (9th Cir.1982) ("[T]he touchstone for [a court's] inquiry is whether an EIS's selection and discussion of alternatives fosters informed decision-making and informed public participation"). Additionally, NEPA does not require a separate analysis of alternatives which are not significantly distinguishable from alternatives actually considered or which have substantially similar conse-

quences. *Northern Plains Resource Council v. Lujan,* 874 F.2d 661, 666 (9th Cir.1989). As a result, an agency's consideration of alternatives is sufficient if it examines an appropriate range of alternatives, even if it does not consider every available alternative. *Headwaters, Inc. v. Bureau of Land Management,* 914 F.2d 1174, 1181 (9th Cir.1990).

In the case *sub judice,* the Forest Service examined seven alternate courses of action with respect to the Trail Creek project: six "action" alternatives (Alternatives B, C, D, E, F and G) and one "no action" alternative (Alternative A).[8] The "action" alternatives proposed timber harvesting in varying locations, amounts and methods in the Trail Creek area. Moreover, the action alternatives all called for varying degrees of timber harvesting in the Beaver Lakes roadless area.

■ Defendants maintain the plaintiffs' preferred alternative "would not have met the management goals, standards and objectives defined in the Beaverhead National Forest by the Beaverhead Forest Plan." Specifically, defendants maintain that "because the management decisions to harvest timber in those areas have already been made at the Forest Plan level it did not need to be revisited."

The fact the Beaverhead Forest Plan designates certain land as suitable for timber management does not, however, obligate the Forest Service to proceed with the timber harvesting, nor does it preclude the Forest Service from exercising its discretion to consider other courses of action. Accordingly, to the extent defendants maintain an alternative aimed at preserving the Beaver Lakes roadless area would be "pointless," based upon the goals of the Beaverhead Forest Plan, the court concludes defendants' summary judgment motion is not well taken. Defendants position is contrary to NEPA's underlying tenet, *i.e.,* that agencies consider all reasonable alternatives so as to ensure an EIS fosters informed decision making. *See, Idaho Conservation League v. Mumma, supra,* 956 F.2d at 1519–20.

8. The regulations promulgated by the Council on Environmental Quality contemplate that an EIS will include a no-action alternative to permit the

agency and the public to address the option. 40 C.F.R. § 1502.14(d).

■ The Forest Service cannot deny there is some benefit to be derived from considering an alternative that preserves the Beaver Lakes roadless area. Plaintiffs, as well as the Montana Department of Fish, Wildlife & Parks, whose considerable expertise in the area of wildlife management is undisputed, expressed concerns that preservation of the Beaver Lake's roadless area warranted full consideration in the Trail Creek NEPA process given the area's high security value for wildlife. Moreover, plaintiffs have alleged the roadless areas provide wildlife corridors essential for maintaining the biological diversity in the Northern Rocky Mountains.

Given the contentious and long standing debate in the State of Montana regarding the preservation of roadless lands and wilderness designation, the court concurs with plaintiffs' assertion that the NEPA process would have been properly served by development of an action alternative that preserved roadless lands in the Trail Creek area. Such an alternative would have afforded the opportunity for scientific and public participation and debate regarding the delicate balance between preserving natural resources and timber management.

Accordingly, the EIS' failure to address an alternative preserving existing roadless lands in the Trail Creek area renders compels this court to REMAND this matter for further administrative proceedings.

## V.

Finally, plaintiffs contend the EIS fails to adequately address the impact of the timber sale on pine marten and goshawks, two of the Beaverhead National Forest's "indicator species." In this court's opinion, plaintiffs have failed to set forth a persuasive argument, supported by recognized authority, in support of their position. Consequently, defendants' summary judgment motion is well taken as to plaintiffs' claims for review predicated upon purported deficiencies in the final EIS as to the pine marten and goshawks.

### CONCLUSION

Therefore, for the reasons set forth herein, the court concludes defendants' motion for summary judgment be, and the same hereby is, GRANTED to the extent set forth above.

IT IS FURTHER ORDERED that the Trail Creek final environmental impact statement is REMANDED for development and consideration of an alternative that preserves the roadless areas within the Trail Creek area.

### ORDER

Plaintiffs instituted the above-entitled action challenging the decision of the United States Forest Service to proceed with a proposed timber sale in the Trail Creek area of the Beaverhead National Forest. Count I of plaintiffs' amended complaint asserted the Trail Creek environmental impact statement ("EIS") failed to adequately consider the impact of the proposed timber sale on the value of the Trail Creek area as a biological corridor between adjacent wilderness and roadless areas. Count II alleged the Trail Creek EIS failed to adequately analyze all reasonable alternatives, including a less environmentally damaging alternative that would exclude logging and road building activity in existing roadless areas. Finally, Count III of plaintiffs' amended complaint was predicated upon the EIS' purported failure to adequately address the impact of the timber sale on pine marten and goshawks.

On December 29, 1994, this court entered a memorandum and order granting defendants' motion for summary judgment as it pertained to Counts I and III of plaintiffs' amended complaint. With respect to Count II of plaintiffs' amended complaint, the court concluded the Trail Creek EIS was inadequate under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.,* because it failed to include an alternative that harvested timber, but preserved the roadless lands within the project area. On January 12, 1995, a Judgment was entered based upon the court's December 29, 1994, memorandum and order.

Presently before the court is plaintiffs' motion, pursuant to Fed.R.Civ.P. 60, requesting the court to clarify the Judgment herein. Specifically, plaintiffs request the Judgment be amended to reflect the fact they prevailed on their claim for declaratory relief. Review of the record herein reveals the defendants have not filed a brief in opposition to plain-

tiffs' motion. Accordingly, the court deems defendants' failure to file a brief in opposition an admission that, in the opinion of counsel, the motion is well taken. *See*, Rule 220-1(a), RULES OF PROCEDURE OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA. Accordingly, the court concludes plaintiffs' motion to amend the Judgment be, and the same hereby is, GRANTED.

Consequently, the Judgment entered on January 12, 1995, in the above-entitled action is hereby amended as follows:

IT IS HEREBY ORDERED AND ADJUDGED that Judgment be entered in defendants favor on the claims advanced by the plaintiffs in Counts I and III of plaintiffs' amended complaint.

IT IS FURTHER ORDERED AND ADJUDGED that Judgment be entered in favor of the plaintiffs on their claim for declaratory relief advanced in Count II of plaintiffs' amended complaint.

IT IS FURTHER ORDERED AND ADJUDGED that the Trail Creek environmental impact statement is REMANDED for development and consideration of an alternative that preserves the roadless areas within the Trail Creek area.

IT IS SO ORDERED.