914 F.2d 179
 32 ERC 1249, 21 Envtl. L. Rep. 20,023
 MARBLE MOUNTAIN AUDUBON SOCIETY, Natural Resources Defense
Council; Klamath Forest Alliance; Klamath River Concerned
Citizens; Salmon River Concerned Citizens; and Defenders
of Wildlife, Plaintiffs-Appellants,
v.
Robert L. RICE, Supervisor, Klamath National Forest; and
United States Forest Service, Defendants-Appellees.
 No. 90-15389.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 18, 1990.
Decided Sept. 13, 1990.
 
 Nathaniel S.W. Lawrence and David B. Edelson, Natural Resources Defense Council, San Francisco, Cal., for plaintiffs-appellants.
 Edmund F. Brennan, Asst. U.S. Atty., Sacramento, Cal., for defendants-appellees.
 Wesley R. Higbie, Hendrickson, Higbie & Cole, San Francisco, Cal., for amici curiae timber companies.
 Appeal from the United States District Court for the Eastern District of California.
 Before GOODWIN, Chief Judge, and SCHROEDER and PREGERSON, Circuit Judges.
 GOODWIN, Chief Judge:
 
 
 1
 Plaintiff environmental groups appeal from a summary judgment in favor of the United States Forest Service in their action challenging a fire-recovery timber sale in the Grider Creek drainage in Klamath National Forest. We reverse and remand.
 
 
 2
 During 1987, fires swept through approximately 15,000 acres of the 27,730-acre Grider Creek drainage. The Forest Service immediately began to plan the salvage and rehabilitation of the damaged area and announced the Grider Fire Recovery Project. Following extensive public comment, the Forest Service prepared both a draft and a Final Environmental Impact Statement (FEIS), a document which considered the environmental impact of nine alternative salvage and harvest proposals. Forest Supervisor Rice prepared a Record of Decision (ROD) adopting a modified version of Alternative H. This alternative called for logging of some green timber as well as the fire-killed, dying or diseased timber, on 3,325 acres of the Grider Creek drainage. Approximately six miles of logging road would be added to existing roads in the sale area.
 
 
 3
 The Recovery Project was prepared in accordance with the 1967 Oak Knoll Ranger District[1] Multiple Use Plan (MUP) and the 1974 Klamath National Forest Timber Management Plan (TMP) and its accompanying EIS.
 
 
 4
 The MUP operates as a broad planning guide for management of resources, including timber, and provides that the management direction for areas within the General Forest Zone (which includes much of the Grider Creek drainage) is for harvesting commercial timber.
 
 
 5
 The TMP adopted a plan calling for intensive timber management. Intensive timber management maximizes the harvest of standing timber and generally results in clear-cutting and radical changes in animal habitat.
 
 
 6
 The accompanying EIS examined the adverse environmental effects which would result from pursuing an intensive timber management policy. Fish and wildlife concerns, however, received only cursory attention. The EIS merely states that timber practices will be modified where necessary to protect the habitat of species that are rare, endangered, or threatened.
 
 
 7
 As part of the Recovery Project, the Limestone Fire Timber Sale auction was held on December 19, 1989. Amicus Curiae Rough and Ready Lumber Company was the highest bidder.
 
 
 8
 Alleging violations of the National Environmental Policy Act (NEPA), 42 U.S.C. Sec. 4321 et seq., and the Clean Water Act, 33 U.S.C. Sec. 1251 et seq., the plaintiffs on December 9, 1989, filed this action challenging the timber sale and seeking declaratory and injunctive relief. They argued that the FEIS failed adequately to consider the unique value of the Grider Creek drainage as the only significant biological corridor[2] between the Marble Mountain and Red Butte wilderness areas. They further argued that the recovery project violates California water quality standards, which are made applicable to the Forest Service through the Clean Water Act. At the time the action was commenced, Congress had enacted legislation to remove certain timber sales from judicial review.
 
 
 9
 On January 9, 1990, the plaintiffs filed a motion for a preliminary injunction barring the Forest Service from proceeding with the recovery project. The Forest Service filed a counter-motion for summary judgment on the grounds that the plaintiffs' NEPA claims were barred by section 312 of Pub.L. No. 101-121, 103 Stat. 743 (1989) (which denies judicial review of Forest Service plans on the sole basis that the plans in their entirety are outdated) and that the planned timber sales did not violate the Clean Water Act.
 
 
 10
 Following a hearing, the district court granted summary judgment in favor of the Forest Service and denied the plaintiffs' motion for a preliminary injunction. The court held that section 312 barred judicial review of the plaintiffs' NEPA claim. As an alternative holding, the court found that the FEIS adequately addressed the biological corridor issue.
 
 
 11
 The court held that the Recovery Project did not violate the Clean Water Act because neither the California Water Control Board nor the plaintiffs timely objected to the Forest Service's interpretation of California's water quality control guidelines.
 
 
 12
 The plaintiffs timely appealed. We issued an order enjoining any logging or road building pursuant to the proposed sale pending a further order.
 
 Section 312
 
 13
 We first address the district court's holding that section 312 (of the 1989 continuing budget resolution) withdrew the court's jurisdiction to consider the plaintiffs' NEPA claim.
 
 
 14
 Section 312 bars challenges to a Forest Service plan "on the sole basis that the plan in its entirety is outdated." It permits challenges to "any and all particular activities to be carried out under existing plans."
 
 
 15
 There is a strong presumption in favor of judicial review of administrative actions, and prohibitions against judicial review are to be narrowly construed. Love v. Thomas, 858 F.2d 1347, 1356 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1932, 104 L.Ed.2d 403 (1989).
 
 
 16
 We recently interpreted section 312's (formerly section 314) jurisdictional bar in Oregon Natural Resources Council v. Mohla, 895 F.2d 627 (9th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990). In that case, plaintiff Oregon Natural Resources Council challenged a single timber sale on the ground that a site-specific Environmental Analysis Report, which was prepared by the Forest Service to evaluate the environmental impact of the proposed timber sale, failed to consider new findings regarding the value of old-growth forests. We held that ONRC's challenge was barred by section 312, even though the challenge was couched in site-specific terms, because the challenge regarding old-growth forests was the type of generic issue which brought into question decisions made in the Timber Management Plan that governed the entire forest. Hence, the ONRC's suit, if successful, would enable the ONRC to challenge, sale by sale, the entire Timber Management Plan.
 
 
 17
 That situation is not present here. The plaintiffs challenge the fire-recovery timber sale in the Grider drainage on the narrow ground that the drainage is a significant biological corridor between the Marble Mountain and Red Butte wilderness areas. Unlike Mohla, the plaintiffs' suit, if successful, would not enable them to challenge the entire Timber Management Plan because biological corridors, by their very nature, occur only in parts of a forest. The corridor issue is not the type of generic issue raised in Mohla. The FEIS, in fact, appears to acknowledge the uniqueness of the Grider drainage as a corridor of relatively uninterrupted forest habitat linking two wilderness areas.[3] We therefore hold that section 312 does not bar the plaintiffs' suit.
 
 Adequacy of the FEIS
 
 18
 We next consider the district court's alternative holding that the FEIS adequately addressed the plaintiffs' concerns.
 
 
 19
 We review the adequacy of an EIS to determine whether it was prepared by the Forest Service in accordance with the procedure required by law. 5 U.S.C. Sec. 706(2)(D). Under this standard, our role is to ensure that an agency has taken the required "hard look" at the environmental consequences of its decision. Kleppe v. Sierra Club, 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730, n. 21, 49 L.Ed.2d 576 (1976); State of Cal. v. Block, 690 F.2d 753, 761 (9th Cir.1982). An agency must set forth a reasoned explanation for its decision and cannot simply assert that its decision will have an insignificant effect on the environment. Jones v. Gordon, 792 F.2d 821, 828 (9th Cir.1986).
 
 
 20
 Based on the record before us, we agree with the plaintiffs that the Forest Service did not take a "hard look" at the impact of the selected salvage and harvest alternative on the Grider drainage biological corridor. Although the FEIS acknowledges that the Grider drainage is a biological corridor, it does not contain a significant discussion of the corridor issue. Instead, the FEIS concludes, without any apparent study or supporting documentation, that the preservation of a 1/2-mile wide strip bisecting the drainage will be sufficient to maintain the corridor. In response to public comments that the EIS does not discuss the importance of maintaining biological corridors, the FEIS characterizes the issue as "a forest-planning matter and therefore beyond the scope of this document (V-16)." The underlying TMP and MUP, however, contain no discussion whatsoever of the corridor issue. We therefore reverse the district court's summary judgment on plaintiffs' NEPA claim and remand for further proceedings.
 
 The Clean Water Act
 
 21
 The plaintiffs contend that the district court erred in granting summary judgment to the Forest Service because the timber sale violated California water quality standards.
 
 
 22
 The Clean Water Act, 33 U.S.C. Sec. 1251 et seq., requires the Forest Service to comply with all state water quality requirements. Oregon Natural Resources Council v. United States Forest Service, 834 F.2d 842, 848 (9th Cir.1987).
 
 
 23
 In their complaint, the plaintiffs alleged that the Recovery Project will violate the Basin Plan, a water quality control plan adopted by the California North Coast Water Quality Control Board. A "water quality objective" of the Basin Plan requires that "[t]urbidity shall not be increased by more than 20 percent above naturally occurring background levels." The plaintiffs argued that the turbidity level from the combined effects of the fire and the Recovery Project will exceed the 20 percent limit.
 
 
 24
 The Forest Service argued that the effects of the fire should not be included in the calculation of the increased turbidity because the fire was "naturally occurring," and the Recovery Project alone will not increase the turbidity level above the 20 percent limit.
 
 
 25
 The district court declined to address this argument, and instead held that the Forest Service was entitled to summary judgment because (1) the California North Coast Water Quality Control Board did not criticize the Draft EIS's application of the Basin Plan's water quality objectives, and (2) although the plaintiffs claimed that the Recovery Project did not meet state water quality objectives, they did not challenge the Forest Service's interpretation and application of the objectives.
 
 
 26
 We disagree. The Water Quality Control Board's failure to criticize the Draft EIS's application of the Basin Plan's water quality objectives does not bar the plaintiffs' suit. The judicial review provision of the Administrative Procedure Act, 5 U.S.C. Secs. 701-706, permits private citizens to sue for alleged state water quality control violations from nonpoint sources.[4] Oregon Natural Resources Council, 834 F.2d at 848-52. We have reviewed the plaintiffs' complaint and conclude that the plaintiffs properly challenged the FEIS's interpretation of state water quality objectives. We therefore also reverse the summary judgment on the plaintiffs' Clean Water Act claim and remand to the district court to address the merits of that claim as well as the NEPA claim.
 
 
 27
 The case is remanded to the district court for further proceedings consistent with this opinion. The injunction issued by this court shall remain in place pending the district court's disposition of the case on remand.
 
 
 28
 REVERSED AND REMANDED.
 
 
 
 [1]
 The Grider Creek drainage is located within the Oak Knoll Ranger District
 
 
 [2]
 Biological corridors provide avenues along which wide-ranging animals can travel, plants can propagate, genetic interchange can occur, populations can move in response to environmental changes and natural disasters, and threated species can be replenished from other areas
 
 
 [3]
 The FEIS at III-33 provides:
 "The Grider drainage currently represents a corridor of relatively uninterrupted forest habitat connecting the Marble Mountain Wilderness to the Klamath River and the unroaded Ft. Goff and Portuguese drainage and Red Butte Wilderness to the north."
 
 
 [4]
 Pollution from silvicultural activities is a type of pollution from a nonpoint source. Oregon Natural Resources Council, 834 F.2d at 849 n. 9