The **FOUNDATION FOR GLOBAL SUSTAINABILITY INCORPORATED'S FOREST PROTECTION and BIODIVERSITY PROJECT, and Mr. Brownie Newman, Plaintiffs,**

v.

**Glenn McCONNELL, Cheoah District Ranger; Randall G. Phillips, Supervisor of the Cheoah District; and John Alcock, Regional Forester for the Cheoah District, all in their official capacity as agents of the United States Forest Service; and the United States Forest Service, as an agency of the United States of America, Defendants.**

Civ. No. 2:93CV69.

United States District Court, W.D. North Carolina, Bryson City Division.

June 2, 1993.

▮

---

Brent Conner, Hendersonville, NC, for plaintiffs.

Clifford C. Marshall, Asst. U.S. Atty., Asheville, NC, for defendants.

## MEMORANDUM OF OPINION

RICHARD L. VOORHEES, Chief Judge.

THIS MATTER is before the Court on Plaintiffs' Motion for a Preliminary and Permanent Injunction ordering the U.S. Forest Service to prepare an Environmental Impact Statement or an Environmental Assessment addressing the effects of the Cheoah Storm Salvage Project. After considering the motion, Plaintiffs' Memorandum in Support of the Preliminary Injunction [1] and Defendants' Objections to Plaintiffs' Motion for Preliminary Injunction, the Court will deny the motion.

## I.  FACTS

On February 21, 1993, a tornado swept through the Cheoah District of the Nantahala National Forest, causing extensive damage in the form of downed trees. Because of the mountainous landscape, the damage manifested itself in five different areas within a three mile radius. The U.S. Forest Service proposed to harvest the damaged timber, and disseminated a scoping notice which invited comment from various environmental groups and the public at large. In addition, the Forest Service conducted several analyses to determine the net environmental effect of the proposed action.

After considering the objections of several environmental groups, the Forest Service removed three of the five areas from the project because they were within a semi-primitive, non-motorized (SPNM) area of the forest. The SPNM designation meant that the law required further analysis of any environmental effect.

The Forest Service has determined that operations which harvest less than one million board feet of timber and require no more than one mile of low standard (Level D) road construction have "no significant effect on the human environment, absent extraordinary circumstances related to the proposed action." Following the exclusion of the SPNM tracts, the remaining two tracts of land (Cochran Creek and Rock Creek Road tracts) comprise approximately 600,000 board feet of timber. Citing the foregoing finding of no significant impact, the Forest Service determined that further documentation of environmental effect was unnecessary, and categorically excluded the Cheoah Storm Salvage Project from documentation in an Environmental Assessment (EA) or an Environmental Impact Statement (EIS). Instead, on April 1, 1993, Cheoah District Ranger Glenn McConnell issued a Decision Memo (DM) outlining the Forest Service's plan for harvesting the downed trees in the two remaining areas.

The DM authorizes the removal of storm damaged timber, and the construction of one mile of temporary road built at the level of lowest impact possible. It does not authorize significant modification of habitat, alteration of the forest canopy, or removal of green trees except as necessary to gain access to the storm damaged timber. To be sure, the storm itself affected wildlife in the area, but the Forest Service concluded that harvesting the downed timber would not significantly increase the storm's negative effect on the forest habitat. Additional facts will be set

---

**1.** The parties agreed in open court to have the Court decide the motion for permanent injunction based on argument at the hearing on the motion for preliminary injunction.

out below as they become relevant to the discussion.

## II. BACKGROUND

On April 15, 1993, Plaintiffs appealed the Forest Service's decision, and requested that the decision be stayed. Citing the "high probability that blue stain fungus will devalue the damaged trees and deterioration will quickly render them valueless," Forest Service Supervisor Randle Phillips denied the request for stay.

On May 7, 1993, Plaintiffs initiated this action. Defendants consented to a Temporary Restraining Order halting all harvesting activity until the matter could be heard by this Court. Because, on May 11, 1993, Regional Forester John Alcock denied Plaintiffs' petition for discretionary agency review of the decision, Supervisor Phillips' denial of the stay was the final agency decision regarding the Cochran Creek and Rock Creek Road tracts. Thus, this Court has jurisdiction pursuant to 5 U.S.C. § 704.

## III. STANDARD OF REVIEW

■ A court reviewing the decision of a federal agency

shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

5 U.S.C. § 706(2)(A) (1966). "The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971); *see also North Carolina v. Fed. Aviation Admin.,* 957 F.2d 1125, 1128 (4th Cir.1992). Instead, the role of the court is to ensure that "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.*

All that the plaintiffs are entitled to do in the courts is to try to persuade the district judge ... on the basis of the evidence before the forest supervisor when he made his decision, that the decision is unlawful.

*Cronin v. United States Dep't of Agric.,* 919 F.2d 439, 445 (7th Cir.1990).

## IV. ANALYSIS

### A. Categorical Exclusion

"Categorical exclusion" means a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency ... and for which, therefore, neither an environmental assessment nor an environmental impact statement is required.

40 C.F.R. § 1508.4 (1978). Pursuant to the Federal Regulations, the Forest Service has found that "salvage which removes 1,000,000 board feet or less of merchantable wood products; which requires one mile or less of low standard road construction" has no significant impact on the human environment, and therefore may be categorically excluded from those projects which require an EA or an EIS. 57 Fed.Reg. 43180, 43209 (1992). Since the Cheoah Storm Salvage Project proposed only one mile of low impact road-building and harvest of 600,000 board feet of timber, the Forest Service did not prepare an EA or an EIS. Plaintiffs contend that the project may not be categorically excluded because the Forest Service improperly segmented the damaged region to allow the categorical exclusion of a project which, in effect, proposes to harvest 1.5 million board feet of timber and for which an EA or EIS is mandatory.

■ In evaluating the significance of impact, the agency must consider

[w]hether the action is related to other actions with individually insignificant but cumulatively significant impacts.... Significance cannot be avoided by ... breaking [an action] down into small component parts.

40 C.F.R. § 1508.27(7) (1978). Plaintiffs seem to argue that, if one project may, because of other prior or future projects, affect the environment in a way that is different from the effect the project would have if it were the only Forest Service action in its history, then that fact is enough to bring the

project's "cumulative effects" within the category of projects requiring further documentation. However, that argument is too extreme. Clearly, when the Forest Service issued its lawful regulations allowing for categorical exclusion of this type of salvage project, it knew that every such project would affect different areas differently because of other Forest Service projects. Yet, the regulations still authorize *categorical* exclusion of such salvage projects. Thus, the Court concludes that, to show a violation of the regulation cited above, Plaintiffs must show more than some cumulative effect that this project has with other Forest Service actions;[2] Plaintiffs must show that the Forest Service intentionally segmented the projects *in order to* evade the mandatory documentation, or that its decision to segment the projects was arbitrary and capricious.

In this case, there is some evidence that the Forest Service segmented the salvage projects to avoid the mandatory paperwork. The Forest Service based its decision, to some extent, on the fact that because the downed trees were in danger of being damaged by fungus to the extent that the Forest Service could not sell the logging rights unless the decision was made quickly.[3] The inference that the constraints of time and profit heightened the Forest Service's hesitancy to prepare significant paperwork is certainly reasonable. On the other hand, it is persuasive that the tracts which are excluded from this project total only 900,000 board feet of timber, yet the Forest Service is preparing an EA documenting the effects of proposed salvage in that area. This is strong evidence that the Forest Service did not segment the operation purposely to avoid the mandatory documentation, and the Court finds that it outweighs the inference of improper motive.

In addition, the legitimate reasons for the segmentation are sufficient for the Court to find that the decision was not arbitrary or capricious.[4] While the storm damage in all areas was similar in that it was all caused by one continuous storm, Plaintiffs cannot avoid the fact that, because of the terrain, the damage, as a practical matter, segmented itself into five distinct areas. The Forest Service combined three of those areas into one group (the "remote group"), and the remaining two into another (the "highway group"), but that decision as well was neither arbitrary nor capricious. The land in the highway group is more accessible by road than the remote group, since a major highway (U.S. 129) runs nearby. Additionally, the remote group is wholly within a SPNM

---

**2.** This is not to say that the "cumulative" effects of this project cannot rise to the level of "extraordinary circumstances" requiring an EA or an EIS. That argument is discussed *infra*.

**3.** Defendants make the argument that the time constraints caused by the likely devaluation of the timber constitute an extraordinary circumstance favoring categorical exclusion. While the extraordinary circumstance exception may require the documentation of some otherwise excludable actions, the Court finds no support for the Defendants' converse argument that an extraordinary circumstance may make action for which an EA or an EIS is otherwise required excludable.

**4.** Plaintiffs attempt to create an issue as to the standard of review of an agency's decision to forego preparation of an EA or an EIS. They cite *Greenpeace U.S.A. v. Evans*, 688 F.Supp. 579 (W.D.Wash.1987), for the proposition that a determination that an action may be categorically excluded "must be upheld unless unreasonable." *Id.* at 582. This is apparently the standard in the Ninth Circuit. *Seattle Community Council Fed'n v. Fed. Aviation Admin.*, 961 F.2d 829, 832 (9th Cir.1992). Insofar as the reasonableness standard deviates from the arbitrary and capricious standard—and the Court is not certain that it does—the Court finds that the law in the Fourth Circuit is that the Supreme Court's decision in *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 376–7, 109 S.Ct. 1851, 1860–61, 104 L.Ed.2d 377 (1989), mandates that a decision to categorically exclude action from documentation be reviewed under an arbitrary and capricious standard. *North Carolina v. Fed. Aviation Admin.*, 957 F.2d at 1128. *See, Sabine River Auth. v. United States Dep't of Interior*, 951 F.2d 669, 678 (5th Cir.), *cert. denied sub nom. Texas Water Conservation Assn. v. Dept. of Interior*, —— U.S. ——, 113 S.Ct. 75, 121 L.Ed.2d 40 (1992) (same); *Audubon Soc'y of Cent. Arkansas v. Dailey*, 977 F.2d 428, 434 (8th Cir.1992) (same); *Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970, 972 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 59, 121 L.Ed.2d 27 (1992) (same). *See also, Grand View v. Skinner*, 947 F.2d 651, 657 (2d Cir.1991) (reviewing court must ascertain that agency took a "hard look" at the effects of its decision before applying arbitrary and capricious standard).

designated area and within a mile of the Federally protected Joyce Kilmer/Slickrock Wilderness Area, while the highway group is not. Thus, the Court finds that the decision to segment the Cheoah Storm Salvage Project into two operations was not unlawful under the Federal Regulations, and the operation at issue was categorically excludable under those regulations so long as no extraordinary circumstances exist.

## B. Extraordinary Circumstances

■ Procedures which provide that certain actions are categorically excludable "shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect." 40 C.F.R. § 1508.4 (1978). Plaintiffs argue that "if any factor listed under [40 C.F.R. §] 1508.27 [defining "significant" effects on the environment] is present, the categorical exclusion is not applicable, and the law requires the preparation of an Environmental Assessment or an Environmental Impact Statement." Plaintiffs' Memorandum in Support of Preliminary Injunction, filed May 25, 1993 at 13. This summary of the regulations is not wholly accurate. Salvage operations of this size have *already* been found to have no significant impact on the environment. If one of the listed factors is present in salvage operations of this size, it has already been considered and rejected by the Forest Service as not having significant impact. Thus, Plaintiffs, in order to show extraordinary circumstances, must show circumstances that are present in this case that are not present *in every salvage operation of this size and type. See Nat'l Trust for Historic Preservation v. Dole,* 828 F.2d 776, 781 (D.C.Cir.1987) ("By definition, CE's [categorical exclusions] are categories of actions that have been predetermined not to involve significant environmental impacts, and therefore require no further agency analysis absent extraordinary circumstances.").

■ Plaintiffs argue that five extraordinary circumstances make this case different from the typical salvage operation of less than one million board feet of timber. They argue that: (1) this operation is different because of its cumulative effect when combined with prior and future salvage and clearcut projects; (2) there are unique or unknown risks associated with this particular project; (3) this project is highly controversial, more so than other salvage operations of its size; (4) this operation will establish a precedent which will significantly affect future decisions; and (5) this project will affect an ecologically critical area, namely a biological corridor, and will thus have a greater affect on the environment than the typical salvage operation of this size.

### 1. Cumulative Effect

The agency must consider the effect of the project, "when added to other past, present, and reasonably foreseeable future actions regardless of what agency ... or person undertakes such other actions." 40 C.F.R. § 1508.7 (1978). Plaintiffs allege that the agency did not consider the combined effect of the timber salvage and the road building, and that the agency did not consider the combined effect of this project with the planned salvage of the other three tracts.

As for the combination of the timber harvest and the road building, the Court finds no merit in that argument. Obviously, in any timber harvest, the harvester will have to build roads into the forest to retrieve the trees. The regulations contemplate that simple fact in explicitly authorizing the type of low impact road construction to be undertaken in this project. 57 Fed.Reg. at 43209. In addition, the Forest Service considered the effects of the operation as a whole, as evidenced by its decision to mitigate the effects. The DM mandates the protection of riparian areas by specifically allowing only certain road-building activities and forbidding the building of roads within the thirty (30) foot riparian zone near streams. Thus, the Court finds that the agency thoroughly considered the effects of the proposed road building and timber harvest.

As for the combined effect of this project with the future harvest of the remaining tracts, Defendants point out that the Forest Service is currently performing an EA on the other three tracts. Presumably, the agency will address the cumulative effects in that document. If not, the Court will address

that issue when it becomes ripe. In any event, the Court finds that the regulations require only one cumulative analysis for projects alleged to act in tandem. No analysis of the cumulative effect of this harvest and the planned harvest is necessary, as long as the agency considers the cumulative effect in the documentation of the planned salvage of the remaining three tracts. Thus, the decision of the agency that the cumulative effects of the project with other projects was not an extraordinary circumstance was not arbitrary or capricious.

### 2. Unique or Unknown Risks

■ The agency must consider the "degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks." 40 C.F.R. § 1508.27(b)(6) (1978). In addition, the regulations include as an extraordinary circumstance "[t]hreatened and endangered species or their critical habitat." 57 Fed.Reg. at 43208.

Plaintiffs allege an extraordinary circumstance in that iron pyrite rock, or anakeesta or hot rock, is present in the area where the DM authorizes road construction. Plaintiffs argue that cutting into the rock may result in acidic runoff. They point to the Forest Service's own conclusion that road construction necessitated heavy gauge steel culverts because of the acid potential in the bedrock. This acidic runoff, Plaintiffs allege, threatens the habitat of the Junaluska Salamander, a species listed as "sensitive" by the Forest Service. Plaintiffs argue that the exposed acidic rock could acidify streams and threaten aquatic wildlife.

Defendants studied the potential effect before issuing the DM. A soil analysis by Forest Soil Scientist Sara Browning noted these concerns. The Forest Service considered her analysis, requiring that rock containing sulfitic material be removed and buried away from streams. In addition, the Forest Service's wildlife analysis concluded that "[i]ndividuals of the Junaluska Salamander may be impacted ... but this project is not likely to cause a trend to federal listing [as a threatened or endangered species] or

loss of viability as long as mitigation measures below are followed."

The Junaluska Salamander, as a sensitive species, is not a species which, if affected, requires an EA or an EIS. 57 Fed.Reg. at 43208. Still, Plaintiffs argue that the potential adverse effects on that species of the Forest Service's proposed action rise to the level of an extraordinary circumstance. Because the Forest Service considered the effect of the operation on the Junaluska Salamander, the Court finds that the Forest Service's conclusion that the presence of the salamander was not an extraordinary circumstance was neither arbitrary nor capricious.

### 3. Highly Controversial

■ The agency must also consider "[t]he degree to which the effects on quality of the human environment are likely to be highly controversial." 40 C.F.R. § 1508.27(b)(4). Plaintiffs argue that the objections of several environmental organizations coupled with concerns within the Forest Service indicate that the project was "highly controversial." Still, all projects which affect the environment are likely to engender some comment, especially when, as here, the agency publicizes its proposed action and solicits public reaction. The Court rejects the argument that any project which does not meet with unanimous approval is highly controversial pursuant to § 1508.27(b)(4).

Plaintiffs cite *Found. for North Am. Wild Sheep v. United States Dep't of Agric.*, 681 F.2d 1172, 1182 (9th Cir.1982), which defines controversy as "the existence of a substantial dispute ... as to the size, nature, or affect of the major federal action rather than to the existence of opposition to the use." Furthermore, the court in *Greenpeace U.S.A., supra,* found the agency's own concerns persuasive as to the presence of a substantial dispute. *Id.* at 583. The Court finds that disagreement within an agency is evidence of controversy, but that the concerns expressed in this case do not constitute the robust dissent necessary to establish that an issue is "highly controversial." In addition, the Court is wary that the effect of a holding that disagreement within an agency makes an issue "highly controversial" may be to squelch de-

bate within the agency. Such a result would be directly opposed to the Congressional desire to have these issues debated, which is the precise reason for requiring agencies to solicit public comment on a proposed action. Thus, the Court finds that the agency's finding that the issue was not "highly controversial" was not arbitrary or capricious.

### 4. Establishing Precedent

■ The agency must consider "[t]he degree to which the action may establish a precedent for future actions with significant effects or represents a decision in principle about a future consideration." 40 C.F.R. § 1508.27(b)(6). Plaintiff argues that the segmentation of this salvage operation sets a precedent that any project may be separated into smaller projects in order to avoid the documentation requirements. As the Court discussed, *supra,* that is not the case. Moreover, there is no evidence that future storms, even of the fury of the one involved here, are likely to present the Forest Service with circumstances sufficiently like those here to allow for capricious use of this case as precedent. The Forest Service may, now and in the future, segment a project for some good reason. However, this case does not set a precedent that the Forest Service may take such action intentionally to avoid documentation, or even arbitrarily or capriciously. Thus, the Court finds that Forest Service's decision that the precedential weight of the Cheoah Storm Salvage Project does not create an extraordinary circumstance was not arbitrary or capricious.

### 5. Ecologically Critical Area

■ The agency must consider the effects of an action on the geography of an area, including its proximity to park lands and ecologically critical areas. 40 C.F.R. § 1508.27(b)(3). Plaintiffs argue that the Cheoah Storm Salvage Project will affect the biological corridor running between the Great Smoky Mountains National Park and the Joyce Kilmer/Slickrock Wilderness Area. Plaintiffs cite *Marble Mountain Audubon Soc'y v. Rice,* 914 F.2d 179 (9th Cir.1990), a case which discussed the effects of a proposed timber sale in California. The *Marble*

*Mountain* court found that the Forest Service had not taken the requisite "hard look" at the effects of the proposed action on the biological corridor.

Plaintiffs admit that, to challenge an agency's decision in court, they must raise substantial questions about whether the proposed action will have significant effects on the environment. Here, Plaintiffs have not done so. All Plaintiffs have done is assert that there is a biological corridor near the tracts proposed to be harvested. Plaintiffs have offered no evidence as to what the possible impact upon it may be, nor have they even argued that there will be an impact at all; they merely assert that they have raised substantial questions. The Court fails to see how the citation to a case involving a biological corridor 3,000 miles away raises substantial questions as to the effect of the Cheoah Storm Salvage Project on the biological corridor between the Joyce Kilmer/Slickrock Wilderness Area and the Great Smoky Mountains National Park. Thus, the Court finds that the Forest Service's decision that the proximity of the biological corridor was not an extraordinary circumstance was not arbitrary or capricious.

Finally, all of the concerns raised by the Plaintiffs, taken together, do not rise to the level of showing an extraordinary circumstance and do not constitute a showing that the Forest Service acted arbitrarily or capriciously.

### V. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for a Preliminary Injunction is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Permanent Injunction is **DENIED.**

A Judgment reflecting the findings herein will be filed contemporaneously herewith.