33 F.3d 59
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jarilen PRESTON; Herb Stein; Daniel E. Dunn; Montana
Ecosystems Defense Council; Greenworld,
Plaintiffs-Appellants,
v.
Clayton YEUTTER; F. Dale Robertson; John W. Mumma,
Defendants-Appellees.
 No. 93-35837.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 14, 1994.
Decided Aug. 19, 1994.
 
 Before: GOODWIN, D.W. NELSON, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jarilen Preston et al. ("Appellants"), joint owners of property lying within the boundaries of a United States Forest Service timber harvesting project ("Project"), appeal the district court's judgment after trial for the Secretary of Agriculture in their action challenging the Forest Service's approval of the Project.
 
 
 3
 The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1331. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and we affirm.
 
 I.
 
 4
 Despite determining that the Forest Service was required to provide direct notice to Appellants and failed to do so, the district court disposed of the substantive issues presented. Appellants argue that the Forest Service's failure to provide adequate notice required that the decision to proceed with the Project be immediately set aside and precluded the district court's review of any substantive claims.[1] We disagree.
 
 
 5
 "[A]gency action taken without observance of the procedure required by law will be set aside." Save the Yaak Committee v. Block, 840 F.2d 714, 717 (9th Cir.1988). However, "[i]t is settled that prejudice must be demonstrated before administrative decisionmaking can be set aside." Northwest Coal. for Altern. to Pesticides v. Lyng, 844 F.2d 588, 595 (9th Cir.1988) (finding Northwest was not prejudiced despite agency's violation of NEPA's scoping provisions); see also Sagebrush Rebellion, Inc. v. Hodel, 790 F.2d 760, 764 (9th Cir.1986) (finding agency's failure to meet notice requirement harmless because the purpose of the notice requirement was satisfied completely). Here, Appellants had the opportunity to voice their concerns and develop a full record in the district court. The de novo review conducted by the district court was sufficient to provide Appellants with an adequate hearing and little would be accomplished by a remand. This is especially true given that Appellants' goal in this action is not to stop the Project, but rather to negotiate the details surrounding it. We reject Appellants' contention that the district court committed reversible error.
 
 II.
 
 6
 Appellants argue that the Forest Service improperly decided not to prepare an environmental impact statement ("EIS") for the Project. NEPA requires the preparation of an EIS for any "major Federal action significantly affecting the quality of the human environment." 42 U.S.C. Sec. 4332(2)(C). An agency proposing a major federal action must analyze the significance of environmental impacts on the local area by considering the cumulative impacts of a proposed site-specific action, together with past and reasonably foreseeable related actions. See 40 C.F.R. Secs. 1508.27(a) and (b)(7). We review an agency's decision not to prepare an EIS under the arbitrary and capricious standard. See Greenpeace Action v. Franklin, 14 F.3d 1324, 1331 (9th Cir.1992).
 
 
 7
 Contrary to Appellants' assertions, the need to insure that migratory corridors remained intact was adequately considered. The Forest Service's EA was tiered to the 1987 Kootenai Forest Plan and the EIS prepared in support of the Kootenai Plan. Each of these documents thoroughly examined the needs of the grizzly bears living in the Kootenai Forest. The Service used a Cumulative Effects Analysis process which examines the effects of all activities over large Bear Management Units. This analysis requires that a minimum of 70% of the cumulative effects area remain freely available to bears at all times. Also, the EA adheres to the Grizzly Bear Standard requirement that 600 foot travel corridors between cutting units be maintained thereby assuring that bears have ample room to move even in areas where activities are occurring. Thus, unlike the case upon which Appellants rely, see Marble Mountain Audubon Soc. v. Rice, 914 F.2d 179, 182 (9th Cir.1990) (concluding that the Forest Service did not take a hard look at the biological corridor issue), the Forest Service adequately discussed and considered the corridor issue. The Forest Service has also instituted numerous additional measures to insure the protection of the grizzly bear pursuant to the mandate of the Forest Plan. The Forest Service took the requisite "hard look" at the consequences of the Project and its treatment of the travel corridors was not arbitrary and capricious. See Friends of Payette v. Horseshoe Bend Hydroelectric Co., 988 F.2d 989, 993 (9th Cir.1993).
 
 
 8
 Appellants also argue that the Forest Service's analysis was inadequate because it failed to consider the effect of road construction on Highway 2, which forms the northern boundary of the analysis area. It is quite true that Highway 2 was not included in the road density calculations contained in the 1990 BE. However, we agree with the district court's finding that:
 
 
 9
 the inclusion of the reconstruction project's impacts would have added little to the EA, and the lack of consideration of those temporary impacts certainly did not prevent a reasoned analysis of the Project.
 
 
 10
 Despite lasting about two years, the construction was "temporary" in that it was completed prior to the sale taking place. The effects of the road construction were also mitigated by the location of Highway 2 on the border of the Project. The road construction did not constitute a factor "essential to a truly informed decision whether or not to prepare an EIS" and therefore we affirm the Forest Service's decision not to reopen the administrative proceedings. See Inland Empire Public Lands Council, 992 F.2d 977, 981 (9th Cir.1993).
 
 III.
 
 11
 The ESA, which contains both substantive and procedural provisions, requires federal agencies to ensure that their actions are not likely to jeopardize the continued existence of any endangered or threatened species. See 16 U.S.C. Sec. 1536(a)(2). The ESA prescribes the following three step process to facilitate compliance with its substantive provisions:
 
 
 12
 1. An agency proposing an action must inquire of the U.S. Fish and Wildlife Service whether any threatened or endangered species "may be present" in the area of the proposed project. See 16 U.S.C. Sec. 1536(c)(1).
 
 
 13
 2. If the answer is affirmative, the agency must prepare a "biological assessment" to determine whether such species is "likely to be affected by the action". The biological assessment may be part of the environmental assessment for the project. Id.
 
 
 14
 3. If it is determined that the project is likely to affect listed species then formal consultations with the U.S. Fish and Wildlife Service are required as well as a biological opinion. Id.
 
 
 15
 See Thomas v. Peterson, 753 F.2d 754, 763 (9th Cir.1985). Appellants argue that the Forest Service violated the first step of this process by failing to consult with the United States Fish and Wildlife Service ("USFWS") during preparation of the first BE and by failing to receive written concurrence in its findings.
 
 
 16
 There are two primary timing provisions contained in the ESA. Section 7(c) requires that the BE/BA "be completed ... before any contract for construction is entered into and before construction is begun with respect to such action." See 16 U.S.C. Sec. 1536(c)(1). Section 7(d) prohibits an agency, after the initiation of consultation with the USFWS, from making "any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures ...". See 16 U.S.C. Sec. 1536(d).
 
 
 17
 Here, the Forest Service did not violate either of these ESA timing requirements. It is true that the Forest Service did not initiate consultation with, nor receive a written concurrence from, the USFWS until its updated BE was submitted in 1990.[2] However, the parties do not dispute that the Forest Service had not entered into any contract relating to the Project and no construction activity had taken place when the 1990 BE was prepared. Further, the activities mentioned by Appellants (eg. engineering, identification, demarcation) do not constitute an irreversible or irretrievable commitment of resources which would violate Sec. 7(d) of the ESA. See North Slope Borough v. Andrus, 642 F.2d 589, 611 (D.C.Cir.1980) (Section 7(d) not violated where oil and gas leases had been issued prior to completion of the consultation). We reject Appellants' argument that the actions taken by the Forest Service violate the ESA.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellants' argument that the Forest Service may not dispute the district court's finding of lack of notice is without merit. See Engleson v. Burlington Northern R. Co., 972 F.2d 1038, 1041 (9th Cir.1992) (arguments that support the judgment as entered can be made without a cross-appeal)
 
 
 [2]
 Appellants argue that the Forest Service violated NEPA by reanalyzing the Project's effects on grizzly bears based on the updated 1990 BE. We agree with the district court's conclusion that the 1990 BE only served to clarify certain aspects of the original BE, which was subject to extensive public scrutiny and administrative proceedings. In fact, the additional mitigation measures set forth in the 1990 BE more fully protect Appellants' interests. Appellants were not prejudiced by the actions of the Forest Service and we therefore defer to the Forest Service's decision to review the 1990 BE without reopening the administrative proceedings. See Northwest Coal. for Altern. to Pesticides, 844 F.2d at 595